## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: | ) |
| | ) **CHAPTER 11** |
| **JAMES RIVER COAL COMPANY,** | ) **NO. 303-04095** |
| **et al.,** | ) **JOINTLY ADMINISTERED** |
| | ) |
| Debtors. | ) **JUDGE MARIAN F. HARRISON** |
| | ) |
| | ) |
| **ANTHONY H.N. SCHNELLING, AS** | ) **ADV. NO. 305-350A** |
| **TRUSTEE OF THE JRCC** | ) |
| **UNSECURED CREDITOR** | ) |
| **LIQUIDATION TRUST,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| **JAMES B. CRAWFORD, et al.,** | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

This matter is before the Court upon the motions to transfer venue to the United States

District Court for the Eastern District of Virginia filed by George S. Slocum, John C.

Bumgarner, Jr., A. Hugh Ewing, III, Edward A. Snyder, John R. Tellmann, Derrick C.

Varney, JR Coal Associates, LLC, f/k/a J.R. Coal Associates (hereinafter "JR Coal"), and

James D. Dotson, and the motion to enforce forum selection clause or in the alternative to transfer venue filed by James B. Crawford (hereinafter "Crawford").[1]

Based on the pleadings and argument of counsel, the Court finds that the motions to transfer venue should be granted in part.

## I. BACKGROUND

In March 2003, James River Coal Company and each of its 21 direct and indirect subsidiaries (hereinafter "debtor") filed for bankruptcy protection under Chapter 11. The debtor's first amended plan of reorganization was confirmed on April 22, 2004. Under the plan, certain causes of action, including the above-styled adversary, were assigned by the debtor to the JRCC Unsecured Creditor Liquidating Trust, whose trustee is Anthony H.N. Schnelling (hereinafter "plaintiff").

Prior to filing for bankruptcy protection, the debtor, JR Coal, and Crawford (not the remaining defendants) entered into a settlement agreement on March 17, 2003. In the agreement, Crawford resigned from various positions with the debtor, released any claims to sums due under various savings, retention, and benefits plans, and agreed to be bound by certain non-compete covenants. In exchange, Crawford received a change-of-control

---

[1]The First Reserve defendants neither support nor oppose the motions to transfer venue. However, the First Reserve defendants assert that Virginia law is applicable.

2 - U.S. Bankruptcy Court, M.D. Tenn.

payment, a payment for sums contributed by him to the debtor's profit sharing plan, a "Key Man" insurance policy, and a position as a consultant to the debtor. In addition, Crawford agreed to transfer 11,867 shares in the debtor to JR Coal in exchange for four Split Dollar Insurance Policies.

Crawford's settlement agreement included ¶ 11(g), which is a forum selection and choice of law clause:

*Governing Law; Jurisdiction; Venue.* The validity, interpretation, construction and performance of this Agreement will be governed by and construed in accordance with the substantive laws of the Commonwealth of Virginia, without giving effect to the principles of conflict of laws of such Commonwealth. The parties agree that the state and federal courts located in the Commonwealth of Virginia will have exclusive jurisdiction in any action, suit or proceeding against [Crawford] based on or arising out of this Agreement and the parties hereby: (a) submit to the personal jurisdiction of such courts; (b) consent to service of process in connection with any action, suit or proceeding against Executive; and (c) waive any other requirement. . . with respect to personal jurisdiction, venue or service of process.

The terms of this agreement were made binding upon "any successor of or to the Company, including, without limitation, any persons acquiring directly or indirectly all or substantially all of the business and/or assets of [the debtor] whether by purchase, merger, consolidation, reorganization or otherwise" in ¶ 11(a)(i). In addition, ¶ 11(a)(vi) required that "any successor (whether direct or indirect, by purchase, merger, consolidation, operation of law or otherwise) to all or substantially all of the business and/or assets of [the debtor] to

3 - U.S. Bankruptcy Court, M.D. Tenn.

assume expressly and agree to perform this Agreement in the same manner and to the same extent that [the debtor] would be required to perform this Agreement."

This settlement agreement was specifically assumed by the debtor in its confirmed plan. However, the Court by order of April 22, 2004, held:

(a)   Nothing herein or in any order that may be entered by the Court confirming the Plan ('the "Confirmation Order") including the assumption of the Settlement Agreement, shall be deemed an approval or disapproval by the Court of the Settlement Agreement Release Provisions; and

(b)   Nothing herein or in the Confirmation Order, including the assumption of the Settlement Agreement, shall be deemed or construed to enlarge, limit, modify or otherwise affect the Settlement Agreement Release Provisions as they existed on or after March 17, 2003.

The plaintiff filed the complaint in this action, which asserts 16 causes of action against Crawford and various other officers and directors of the debtor and entities that either have an affiliation with those officers and directors or which owned stock in the debtor. In particular, the defendants are as follows: Crawford (one of debtor's founders and a major shareholder), James D. Dotson (one of debtor's founders, major shareholder, and officer and member of the Board of Directors for each corporation through early 2003); William E. Macauley (Board of Directors from 1994 until 2000, and an officer and/or director of First Reserve Corporation during that time); Benjamin A. Guill (Board of Directors from 2000

until 2002 and an officer and/or director of First Reserve Corporation during that time); John A. Hill (Board of Directors from 1994 until 2002, and an officer and/or director of First Reserve Corporation during that time); George S. Slocum (Board of Directors from 1994 through the petition dates); John C. Bumgarner, Jr. (Board of Directors from 1996 through early 2003); A. Hugh Ewing, III (Board of Directors from 1988 through the petition dates, and provided investment banking services to the debtor through Ewing Monroe & Company); Edward A. Snyder (Board of Directors from 1999 through the petition dates); John R. Tellman (officer, director, and shareholder); Derrick Varney (officer of one or more of the subsidiaries and a shareholder); JR Coal (partnership owned, controlled, and used by Crawford and Dotson to conduct various interested transactions with the debtor); and First Reserve Corporation (Delaware corporation that is the managing general partner of certain Delaware limited partnerships, including the First Reserve Funds, which were major shareholders of the debtor).[2]

The complaint raises the following counts, which include both bankruptcy and non-bankruptcy issues:

Count 1:    Avoidance of Intentional Fraudulent Transfers
            Under Section 548 (a)(1)(A) of the Bankruptcy
            Code Against First Reserve, Crawford, Dotson,
            and JR Coal.

---

[2]Also listed as defendants are American Gas & Oil Investors, AMGO II, First Reserve Fund V, L.P., First Reserve Fund V-2, L.P., First Reserve Fund VI, L.P., and John Does 1-5.

Count 2:     Avoidance of Intentional Fraudulent Transfers and Conveyances Under Section 544 of the Bankruptcy Code and Applicable State Law Against First Reserve, Crawford, Dotson, Tellman, Varney, and JR Coal.

Count 3:     Avoidance of Fraudulent Transfers Under Section 548 (a)(1)(B) Against First Reserve, Crawford, Dotson, and JR Coal.

Count 4:     Avoidance of Fraudulent Transfers Under Section 544(b) and Applicable State Fraudulent Conveyance or Fraudulent Transfer Law Against First Reserve, Varney, Tellman, Crawford, Dotson, and JR Coal.

Count 5:     Avoidance of Preferences Under Section 547 of the Bankruptcy Code Against First Reserve, Dotson, Crawford, and JR Coal.

Count 6:     Recovery of Avoided Transactions Under Section 550 of the Bankruptcy Code Against First Reserve, Crawford, Dotson, JR Coal, Varney, and Tellman.

Count 7:     Disallowance of Claims Against First Reserve, Dotson, Crawford, JR Coal, Varney, and Tellman.

Count 8:     Breach of Fiduciary Duty Against the Directors.

Count 9:     Aiding and Abetting Breach of Fiduciary Duty Against First Reserve.

Count 10:    Civil Conspiracy Against the Insiders.

Count 11:    Corporate Waste/Unlawful Distributions Against the Directors.

Count 12:    Money Had and Received Against First Reserve, Crawford, Dotson, Tellman, Varney, and JR Coal.

6 - U.S. Bankruptcy Court, M.D. Tenn.

Count 13: Self-Dealing in Deepening the Insolvency of the Debtors Against the Insiders.

Count 14: Unwinding Transactions Void Under Illegal Shareholder Agreement, Illegal First Reserve Veto, and/or the Terms of the Shareholder Agreement Against First Reserve, Dotson, Varney, Tellman, Crawford.

Count 15: Violation of The Trust Fund Doctrine Against the Directors.

Count 16: Breach of the Shareholder Agreement Against Dotson.

## II. ARGUMENTS

All of the moving defendants assert that venue should be transferred to the Eastern

District of Virginia because:

1. Some of the claims of this case involve application of Virginia law.

2. Most key parties and witnesses reside in or around Virginia.

3. Key documents, including documents related to corporate governance, financial statements, and other related documents are located in Virginia.

4. No witnesses or documents are located in Tennessee.

5. The contracts that form the basis for the plaintiff's claims, for the most part, were drafted and entered into in Virginia. None have a relation to Tennessee.

6. Virginia has a substantial interest in governing the internal affairs of a Virginia corporation.

In addition, Crawford asserts that his settlement agreement contains the forum selection clause which requires the trial of this action in Virginia federal or state courts.

In response, the plaintiff asserts that Kentucky rather than Virginia law applies (because the majority of the debtor's operations were in Kentucky) and submits that the moving defendants have not satisfied their burden of establishing that discretionary transfer to Virginia is merited, in the interest of justice, or for the convenience of the parties:

## A. Interest of Justice:

1. Transfer would violate canon of bankruptcy law that proceedings should be centralized to ensure most efficient distribution of debtor's assets.

2. Transfer could lead to inconsistent rulings because the debtor's insolvency is a central issue in the over 300 adversaries filed in this bankruptcy case.

3. Transfer would set precedent that would encourage defendants in the other 300 plus adversaries to seek a change of venue.

4. Three of the moving defendants participated in the decision for the debtor to file for bankruptcy in Tennessee and should not now be allowed to complain about venue.

5. The plan specifically provided for this Court's retention of jurisdiction to hear this dispute.

## B. Convenience of the Parties:

1. Three of the moving defendants participated in the decision for the debtor to file for bankruptcy in Tennessee.

8 - U.S. Bankruptcy Court, M.D. Tenn.

2. Several of the moving defendants participated in the bankruptcy proceedings by filing proofs of claims and/or serving as directors for the debtor.

3. The Court specifically retained jurisdiction to hear and determine the claims against the moving defendants.

4. The moving defendants cannot show that this forum would inflict hardship as the moving defendants are highly mobile individuals from six different states.

5. The moving defendants have not shown that any witnesses would not be available for trial in this Court.

6. The majority of the documents will come from the debtor.

### C. Forum Selection Clause:

1. The plaintiff asserts that he is not suing Crawford under the settlement agreement entered into with the debtor. Instead, the plaintiff is suing for fraudulent conveyances and/or preferences.

2. Even if the forum clause does apply, it should be set aside as violating the fundamental policy to provide a single forum in which to protect, preserve, and distribute the assets of the estate.


In addition, the plaintiff asserts that the issue of venue has already been decided

(however, this was whether to transfer the bankruptcy case to Kentucky).


Based on the plaintiff's assertions, the First Reserve defendants filed a response in

case the Court decides to address the choice of law issue in connection with the ruling on the

other moving defendants' motions to transfer venue. The First Reserve defendants submit

that because the debtor is a Virginia corporation and because all the claims are based on transactions related solely to the debtor and not any of its subsidiaries, Virginia law controls.

## III. DISCUSSION

### A. Forum Selection Clauses

Initially, the Court finds that the first issue to be decided is whether all or part of the case against Crawford is "based on or arise[s] out of" the settlement agreement. (See above discussion at page 3). If so, the issue becomes whether the forum selection and choice of law clause in the settlement agreement should be enforced.

Crawford asserts that the forum selection and choice of law clause in the settlement agreement control where this lawsuit should be heard.[3] In response, the plaintiff asserts that the settlement agreement is not applicable because he is not suing for breach of the settlement agreement and alternatively, that if the forum selection clause is applicable, it should be ignored as against the policy of the Bankruptcy Code.

---

[3]Crawford argues that the forum selection clause requires that this matter be heard in the state court in the Commonwealth of Virginia. In the alternative, Crawford requests that venue be changed to the United States District Court for the Eastern District of Virginia. All the other moving defendants request that the case be moved to the United States District Court for the Eastern District of Virginia, and the Court notes that the forum selection clause provides for jurisdiction in "the state and federal courts located in the Commonwealth of Virginia."

## 1. **Applicability of the Settlement Agreement**

First, the Court finds that the settlement agreement is relevant to this adversary proceeding. In the complaint, the plaintiff alleges that both pre- and post-petition payments made pursuant to what it refers to as the "Crawford Payoff" (which occurred on the date of the settlement agreement) are avoidable. In the non-bankruptcy claims, the Trustee also attempts to impose liability upon Crawford for his receipt of funds and the forgiveness of loans pursuant to the "Crawford Payoff." While the plaintiff's allegations do not allege a breach of the settlement agreement, it is clear from the record that the complaint against Crawford "arises out of" the settlement agreement, and thus, the forum selection clause is applicable.

Moreover, the debtor clearly assumed this agreement as part of confirmation, and the plaintiff, as assignee, steps into the shoes of the debtor and must be bound by the terms of that assumed agreement.

## 2. **Enforcement of the Forum Selection Clause**

The inquiry cannot stop here. Even though the settlement agreement is binding on the plaintiff, this Court has the authority to determine whether it will enforce the forum selection clause of the agreement.

11 - U.S. Bankruptcy Court, M.D. Tenn.

Forum selection clauses are prima facie valid and should be enforced unless the resisting party shows that enforcement of the forum selection clause would be unreasonable. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). A forum selection clause is unreasonable if (1) its incorporation into the contract is the result of fraud or overreaching, (2) its enforcement would violate a strong public policy of the forum in which the suit is brought, or (3) the selected forum is so seriously inconvenient it deprives a party of its day in court. *Shell v. R.W. Struge, Ltd.*, 55 F.3d 1227 (6th Cir. 1995). The party trying to invalidate a forum selection clause bears a "heavy burden of proof." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991).

Here, the plaintiff asserts that enforcement of the forum selection clause would "violate the fundamental policy of the Bankruptcy Code to provide a single forum in which to protect, preserve and distribute the assets of a bankrupt's estate." *Sugarman v. Rouse Constr., Inc. (In re Tech. Indus., Inc.)*, 21 B.R. 863, 866 (Bankr. M.D. Tenn. 1982).

Public policy does favor centralization of bankruptcy proceedings in bankruptcy court where a case is pending. *Envirolite Enter., Inc. v. Glastechnische Industrie Peter Lisec Gesellshaft M.B.H.*, 53 B.R. 1007, 1013 (S.D.N.Y. 1985). However, this public policy is not overriding under all circumstances. If the proceeding is strictly non-core, this policy is not so strong as to abandon a forum selection clause. *McCrary & Dunlap Constr. Co., LLC*

*v. CED Constr. Partners, Ltd. (In re McCrary & Dunlap Constr. Co., LLC)*, 256 B.R. 264, 266 (Bankr. M.D. Tenn. 2000).

As to strictly core proceedings, the enforcement of a forum selection clause would violate the public's interest in centralizing bankruptcy proceedings in the bankruptcy court where the case is pending. *Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822, 836-37 (S.D.N.Y. 2002); *N. Parent, Inc. v. Cotter & Co. (In re N. Parent, Inc.)*, 221 B.R. 609, 622 (Bankr. D. Mass. 1998); *In re Tech. Indus., Inc.*, 21 B.R. 863, 866.

When the adversary involves core and non-core matters, the determination is more complex. In these circumstances, the Court must determine whether the transfer of the non-core claims requires the transfer of the core claims. *In re N. Parent, Inc.*, 221 B.R. 609, 630. Where the core claims are inextricably intertwined with or duplicative of the facts and law necessary to determine the non-core claims which are subject to the forum selection clause, such core claims should be dismissed or transferred with the non-core claims. *Id.* Whereas, "[t]ransferring a core matter that is not 'inextricably intertwined' with non-core matters adversely impacts the strong public policy interest in centralizing all core matters in the bankruptcy court." *Breeden v. The Aegis Consumer Funding Group, Inc. (In re Bennett Funding Group, Inc.)*, 259 B.R. 243, 252 (N.D.N.Y. 2001) (citations omitted) (holding that

where court has already withdrawn the reference of an adversary proceeding, the policy behind centralizing core matters is not applicable).

In the present case, there are core issues involving the avoidance of fraudulent transfers and preferences, and there are non-core issues involving state law allegations, all of which implicate the assumed agreement and its forum selection clause. Because these issues are intertwined, the plaintiff needs to show more than general bankruptcy policies to meet its burden of proof to resist the application of the forum selection clause. *See In re N. Parent, Inc.*, 221 B.R. at 630. The plaintiff has not done so regarding the possibility of inconsistent rulings on the issues set forth below. Accordingly, the Court finds that the forum selection clause should be enforced with limitations. Thus, Crawford's motion to enforce the forum selection clause of the settlement agreement should be granted, and the action against Crawford shall be transferred to the United States Bankruptcy Court for the Eastern District of Virginia, subject to the limitations set forth below designed to avoid inconsistent rulings.

## B. Venue Transfer Under 28 U.S.C. § 1412

While the granting of Crawford's motion must be considered in determining whether the remainder of the adversary should be transferred to the Eastern District of Virginia, it does not settle the matter, and further analysis is required.

14 - U.S. Bankruptcy Court, M.D. Tenn.

Pursuant to 28 U.S.C. § 1412, the bankruptcy court may transfer a case or proceeding under the Bankruptcy Code, including an adversary proceeding, to a district court for another federal district if doing so is "in the interest of justice or for the convenience of the parties." Whether to grant a motion to transfer venue is discretionary. *McLemore v. Thomasson (In re Thomasson)*, 60 B.R. 629, 632 (Bankr. M.D. Tenn. 1986). Unlike the enforcement of a forum selection clause, the burden of proof is on the moving party to establish by a preponderance of the evidence that venue should be transferred in the interest of justice or convenience. Moreover, a plaintiff's choice of forum is entitled to great deference "[u]nless the balance is strongly in favor of the defendant." *In re Gurley*, 215 B.R. 703, 709 (Bankr. W.D. Tenn. 1997) (quoting *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951)).

## 1. "Interest of Justice" Prong

In determining whether it is in the interest of justice to transfer venue, the following factors are not exhaustive but may be considered:

- a.  whether the transfer would promote the economic and efficient administration of the bankruptcy estate.

- b.  whether the interests of judicial economy would be served by the transfer.

- c.  whether the parties would be able to receive a fair trial in each of the possible venues.

- d.  whether either forum has an interest in having the controversy decided within its borders by those familiar with its laws.

15 - U.S. Bankruptcy Court, M.D. Tenn.

e.     whether the enforceability of any judgment obtained would be
       affected by the transfer.

f.     whether the plaintiff's original choice of forum should be
       disturbed.

*In re TIG Ins. Co. v. Smolker (In re TIG Ins. Co.)*, 264 B.R. 661, 668 (Bankr. C.D. Cal.

2001) (citing *A.B. Real Estate, Inc. v. Bruno's Inc. (In re Bruno's, Inc.)*, 227 B.R. 311,

324-25 (Bankr. N.D. Ala. 1998)); *see Brungardt Honomichl & Co. v. PF.Net Constr. Corp.*

*(In re Velocita Corp.)*, 285 B.R. 188, 190 (Bankr. M.D.N.C. 2002); *Irwin v. Beloit Corp. (In*

*re Harnischfeger Indus., Inc.)*, 246 B.R. 421, 435-37 (Bankr. N.D. Ala. 2000) (citations

omitted).

### (a) Efficient Administration

A key consideration in addressing the "interests of justice" prong is whether the

transfer will impact the efficient administration of the bankruptcy estate.

*In re Harnischfeger*, 246 B.R. 421, 435; *In re Gurley*, 215 B.R. 703, 709 (quoting *In re*

*HME Records, Inc.*, 62 B.R. 611, 613 (Bankr. M.D. Tenn. 1986)). Here, the debtor's plan

of reorganization was confirmed on April 22, 2004, and all possible actions were assigned

to the plaintiff, including the present adversary complaint.

While this action will not have a bearing on the reorganization effort, it will have an

impact on the estate's distribution to unsecured creditors. In particular, the plaintiff has filed

16 - U.S. Bankruptcy Court, M.D. Tenn.

approximately 300 adversaries in order to collect funds to pay the unsecured creditors in this case. The possibility of inconsistent rulings regarding shared issues is one of efficient administration.

To date, the defendants in the cases now before the Court have filed only motions to dismiss which do not appear to address issues relevant to the remaining 300 adversaries. However, the Court held this Memorandum Opinion until it conducted an exhaustive pre-trial conference in the other adversaries during which several threshold issues common to the defendants in those cases were identified. These common issues include: (1) whether the debtor adequately preserved avoidance causes of action in its Chapter 11 plan and accompanying disclosure statement, and (2) whether the doctrines of estoppel and standing are thus implicated to bar such action. In addition, should these cases proceed past their threshold issues, the Court contemplates a separate hearing for those defendants raising solvency as a defense. Should Crawford and the other defendants in the present case intend to raise any of these "threshold" defenses, those defenses will be determined in this Court on the schedule set forth in the Scheduling Order attached hereto as Exhibit A. Likewise, if any of the defendants now before the Court intend to raise solvency as a defense, it likewise will be determined in this Court along with the same defense in the remaining adversaries.

17 - U.S. Bankruptcy Court, M.D. Tenn.

### (b) Judicial Economy

In assessing the "judicial economy" factor, courts look to each forum's familiarity with the facts at issue and with the law to be applied in the case. *In re Harnischfeger*, 246 B.R. 421, 440. In this action, neither forum has a greater familiarity with facts because they have not been addressed previously. This Court's exposure to the allegations has been limited to the transfer of these claims to the plaintiff through the debtor's plan of reorganization and related motions, and does not provide a significant advantage to the Court's retention of this matter, except as set forth above.

As for the law to be applied, the Court finds, for the reasons set forth below, that Virginia law is applicable to the non-core issues raised in the complaint.

Generally, a court applies its own forum's choice of law principles to determine which jurisdiction's substantive law controls in a multi-state controversy. *Bailey v. Chattem, Inc.*, 684 F.2d 386, 392 (6th Cir. 1982). When a diversity case is commenced in federal court, that court must apply the choice of law rules of the state in which it sits. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Dresser Indus. v. Sandvick*, 732 F.2d 783, 785 (10th Cir. 1984). Accordingly, this Court must look to Tennessee law to determine the choice of law.

Tennessee has codified the internal affairs doctrine at T.C.A. § 48-25-105(c), which states that Tennessee is not authorized "to regulate the organization or the internal affairs of a foreign corporation authorized to transact business in this state." *See Southwest Equip. Rental, Inc. v. Fuller*, 1992 WL 684872, *9 (E.D. Tenn. July 9, 1992) (determining that under Tennessee law, court must apply local law of the state of incorporation with regard to trustee's unlawful distribution claims, except where some other state has more significant relationship to parties and transaction at issue.); *Hicks v. Lewis*, 148 S.W.3d 80, 84 (Tenn. Ct. App. 2003) (stating that "Tennessee has long adhered to the 'internal affairs' doctrine, under which matters involving the internal affairs of a foreign corporation are deemed substantive in nature and 'should be resolved in accordance with the law of the state of incorporation'").

Specifically, this doctrine holds that claims that involve the internal affairs of a corporation should be resolved in accordance with the laws of the state of incorporation. *See, e.g., First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983). "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced

with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) (citing Restatement (Second) of Conflict of Laws § 302, Comment b, at 307-08 (1971)).

Accordingly, because Tennessee law follows the internal affairs doctrine, Virginia, the state of incorporation, must determine the fiduciary duties of corporate actors, which is an integral part of this adversary. *See Limor v. Buerger (In re Del-Met Corp.)*, 322 B.R. 781, 801 (Bankr. M.D. Tenn. 2005). In addition, from a review of the complaint, it appears that some of the issues raised are undecided under Virginia law or follow a minority rule.

### (c) Fair Trial

There is no evidence that either forum would be more or less impartial in addressing the matters set forth in this action. Thus, the fair trial factor does not weigh in favor of or against transfer of venue.

### (d) Interests of the Forum

Having found that Virginia law applies to the state law issues, it is clear that Virginia has a distinct and recognizable interest in having this case adjudicated in its courts. The claims at issue involve financial transactions by the debtor and the obligations and actions of its board of directors, many of which took place in Richmond, Virginia. As such, these claims are of local interest in Virginia, the parent company's domicile. *See In re*

*Harnischfeger*, 246 B.R. 421, 436 (acknowledging that jurisdiction where cause of action accrued has interest in hearing case).

In addition, as already held, the settlement agreement between Crawford and the debtor specifically states that the federal and state courts of Virginia have "exclusive jurisdiction in any action, suit or proceeding against [Crawford] based on or arising out of this Agreement." While this only applies to one of the defendants, the fact that any action against one of the defendants must be heard in Virginia (except as provided above) weighs heavily in favor of all the defendants in this action being heard in Virginia.

In contrast, the underlying bankruptcy proceeding was filed in this Court on the grounds that one of the debtor's 21 subsidiaries is a Tennessee corporation. None of the other debtor companies is domiciled in Tennessee, nor did any board meetings occur in Tennessee. Thus, the interests of the forum strongly argue in favor of transfer to Virginia, except as provided above.

### (e) Enforceability of Judgment

There is no indication that the location of the litigation will impact the enforcement of any judgment rendered in favor of the plaintiff against any or all of the defendants named in his complaint. Therefore, this factor does not weigh in favor of or against transfer of venue.

### (f) Plaintiff's Original "Home Court"

Generally, for purposes of venue for adversary proceedings, there is a "home court" presumption favoring the location of the bankruptcy. *In re TIG Ins.,* 264 B.R. 661, 668. This presumption was created to facilitate the economic and efficient administration of the estate. *In re Harnischfeger,* 246 B.R. 421, 440. In this case, however, the presumption is diluted because the debtor is not a party to this action and has no interest in the proceeding. In fact, given that the debtor's plan of reorganization has been confirmed, it is difficult to imagine how the transfer of this proceeding would impair the administration of the estate. *See Son v. Coal Equity, Inc. (In re Centennial Coal, Inc.),* 282 B.R. 140, 144-45 (Bankr. D. Del. 2002) (stating that plaintiff's filing of adversary proceeding in forum in which bankruptcy was filed has "diminished weight" when underlying facts of case have no bearing on reorganization effort). Moreover, at least with regard to the claims relating to the settlement agreement, the debtor confirmed that Virginia was the appropriate forum by assuming the agreement through its plan of reorganization. *See City of Covington v.*

*Covington Landing Ltd. P'ship,* 71 F.3d 1221, 1226 (6th Cir. 1995) ("[w]hen the debtor assumes the lease or the contract under § 365, it must assume both the benefits and burdens of the contract.").

## 2. Convenience of the Parties

A moving party may also satisfy its burden under 28 U.S.C. § 1412 by demonstrating that the transfer is appropriate due to the "convenience of the parties." The following factors are relevant to the analysis of this prong:

a.     the location of the plaintiff and the defendant.

b.     the ease of access to the necessary proof.

c.     the convenience of the witnesses and the parties and their relative physical and financial condition.

d.     the availability of the subpoena power for unwilling witnesses.

e.     the expense related to obtaining witnesses.

*In re TIG Ins. Co.,* 264 B.R. 661, 668 (citing *In re Bruno's, Inc.,* 227 B.R. 311, 325 and *Larami Ltd. v. Yes! Entm't Corp.,* 244 B.R. 56 (D.N.J. 2000)); *In re Harnischfeger,* 246 B.R. 421, 437 (citations omitted). These factors strongly support a transfer of this case to Virginia, except as provided above.

### (a) Location of the Parties

In considering this factor, courts refer to the physical location of the parties and not to their state of incorporation. *In re Harnischfeger*, 246 B.R. 421, 443. Here, the plaintiff is located in New York. None of the defendants reside in Tennessee. Crawford and Ewing are residents of Virginia. JRCA was a Virginia partnership and JR Coal is a Virginia limited liability company. Tellmann frequently travels to Richmond, Virginia, and Snyder maintains a house in Charlottesville, Virginia. Because no parties are located in Tennessee and at least three defendants are located in Virginia, this factor supports Virginia as the most appropriate forum, except as provided above.

### (b) Access to Necessary Proof

As noted earlier, the debtor's headquarters are located in Richmond, Virginia. Because these claims involve the debtor's financial transactions and its corporate governance, the documents relating to such transactions will be located in Virginia. While such a consideration has less weight in this age of sophisticated technology and express delivery, this factor weighs in favor of transfer to Virginia, except as provided above.

### (c) Convenience of Witnesses

It is clear that this case will require the testimony of numerous former and current employees and personnel of the debtor, many of whom reside in Virginia. In addition, the

24 - U.S. Bankruptcy Court, M.D. Tenn.

debtor's corporate counsel, accountants, benefits coordinator and advisor, and primary investment banker during the time period relevant to this adversary are located in and continue to work in Richmond, Virginia. A transfer of the case to Virginia will minimize the inconvenience and expense to these potential witnesses. In contrast, there is no indication that any possible witnesses reside in Tennessee. Thus, this factor supports a transfer of venue to Virginia, except as provided above.

### (d) Subpoena Power

It is undisputed that the debtor's key employees, accountants, lawyers, benefits coordinator and advisor, and primary investment banker are all located in Virginia. To the extent that any of these witnesses will not appear voluntarily, a Virginia court will have the direct power to subpoena them. Whereas, a Tennessee court would not be able to exert the same power. Conversely, because there are no known witnesses located in Tennessee, there is no advantage to maintaining subpoena power in this state. This factor strengthens the case for Virginia as the more convenient forum, except as provided above.

### (e) Expense Related to Obtaining Witnesses

As noted above, it is undisputed that the relevant witnesses in large part reside in Virginia, or in states closer to Virginia than to Tennessee. The cost to bring these witnesses to Tennessee for trial is potentially quite large, whereas the cost of bringing witnesses to

25 - U.S. Bankruptcy Court, M.D. Tenn.

Virginia would be relatively minimal. Therefore, this factor also weighs in favor of transferring the suit to Virginia, except as provided above.

## IV. CONCLUSION

For all of the foregoing reasons, Crawford's motion to enforce a forum selection clause should be granted and the motions for change of venue should also be granted (except to the extent any of the "shared" issues are relevant to the present case) and the case should be transferred to the United States Bankruptcy Court for the Eastern District of Virginia. As set forth above, any of the identified "shared" issues discussed above should be decided in this Court.

An appropriate order will enter.

MARIAN F. HARRISON
UNITED STATES BANKRUPTCY JUDGE

Attachment

26 - U.S. Bankruptcy Court, M.D. Tenn.

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

In re:                                                )
                                                       )
JAMES RIVER COAL COMPANY, et al.                       )          Case No. 03-04095-MH3-11
                                                       )
Debtors.                                               )

### SCHEDULING ORDER PURSUANT TO
### NOVEMBER 30, 2005 PRETRIAL CONFERENCE

The Court conducted a Pretrial Conference on November 30, 2005, pursuant to the Order

Granting in Part Motion to Convert September 22, 2005 Pretrial Conference to Status

Conference, entered October 20, 2005 (the "October 20 Order") (Docket No. 1934), in the

pending adversary proceedings seeking to avoid and recover alleged preferential transfers (the

"Preference Proceedings").

The Court heard statements of counsel and has considered the entire record in this

Chapter 11 case and in the Preference Proceedings. The Court hereby finds as follows:

1.     Pursuant to the October 20 Order, Rothschild Inc. filed a Limited Objection to

Request to Consolidate All Adversary Proceedings, on November 14, 2005.

2.     Pursuant to the October 20 Order, a Statement was filed on November 21, 2005

by certain Defendants[2] (represented by Gullett, Sanford, Robinson & Martin, PLLC) outlining

---

[1]AAA Mine Service, Inc. and AAA Mine Service Underground, Inc., Adversary Proceeding No. 305-00280A; Asher & Son Welding, Inc., Adversary Proceeding No. 305-00154A; Bluegrass Mining Co., Inc., Adversary Proceeding No. 305-00295A; Campbell Oil & Mine Supply, Inc., Adversary Proceeding No. 305-00397A; C. Reiss Coal Company, Adversary Proceeding No. 305-00298A; Canada Coal Co., Adversary Proceeding No. 305-00198A; Downard Hydraulics, Inc., Adversary Proceeding No. 305-00257A; Dynamic Security, Inc., Adversary Proceeding No. 305-00294A; Elk Horn Stone Company, Adversary Proceeding No. 204-00167A; Heintzmann Corp., Adversary Proceeding No. 305-00228A; Industrial Supply Co., Adversary Proceeding No. 305-00166A; J. H. Fletcher, Adversary Proceeding No. 305-00322A; Kenny Smith Timber Company, Adversary Proceeding No. 305-00325A; King Transport Co., Inc., Adversary Proceeding No. 305-00268A; Manchester Welding, Inc., Adversary Proceeding No. 305-00178A; Mayhorn's, Inc., Adversary Proceeding No. 305-00181A; Reed & Damron Trucking, Inc., Adversary Proceeding No 305-00311A; Reiss Viking Corporation, Adversary Proceeding No. 305-00201A; Spartan Rock Products, Inc., Adversary Proceeding No. 05-00365A; State Electric Supply Co., Adversary Proceeding No. 05-00329A; and United Central Industrial Supply, Adversary Proceeding No. 305-00214A.

271222.1/2093508

certain common factual and legal issues and suggestions as to evidentiary matters in the Preference Proceedings. Similar Statements were submitted by other Defendants in other Adversary Proceedings.

3. Pursuant to the October 20 Order, Anthony H.N. Schnelling (the "Trustee"), Trustee of the JRCC Unsecured Creditor Liquidating Trust (the "Liquidating Trust") also filed on November 21, 2005 a Statement of Common Issues in connection with the Preference Proceedings.

4. It is in the interest of the parties and judicial economy that the Court address threshold issues which will not require discovery, prior to the commencement of discovery on the issue of insolvency and/or other issues in the Preference Proceedings. Those threshold issues are whether the Debtors adequately preserved avoidance causes of action in their Chapter 11 Plan and accompanying Disclosure Statement, and whether doctrines of estoppel and standing are thus implicated to bar such actions (the "Threshold Issues").

5. Rothschild, Inc. has raised res judicata and collateral estoppel defenses arising from its post-petition retention by James River Coal Company and post-petition orders approving its compensation (the "Rothschild Issues"). The Rothschild Issues also do not require discovery and should be considered with the Threshold Issues.

6. By generally defining the Threshold Issues in the foregoing paragraph, the Court does not intend to prohibit the parties from more specifically or technically defining such issues in their Motions, Responses, Replies and Memoranda of Law to be filed pursuant hereto.

AND IT APPEARING that no further notice hereof or hearing hereon is necessary,

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED as follows:

1. Defendants represented by Gullett, Sanford, Robinson & Martin, PLLC shall file a Motion for Summary Judgment and Memorandum of Law on the Threshold Issues by
272691 3/2005508

2

December 30, 2005. Said Motion and Memorandum will be filed in the main Chapter 11 case, and said counsel shall file a Notice of such filings in each adversary proceeding wherein said counsel represents a particular Defendant.

2. Defendants represented by other counsel who wish to join in said Motion, or address different or additional issues or arguments related to the Threshold Issues, shall file their Motions and any Supplemental Memoranda of Law by January 6, 2006. Said counsel shall likewise file their Motions and Memoranda in the main case, and shall file a Notice of such filing in each adversary proceeding wherein counsel represent particular Defendants.

3. Rothschild, Inc. shall file a Motion for Summary Judgment and Memorandum of Law on the Rothschild Issues by December 30, 2005. Said Motion and Memorandum shall be filed in the adversary proceeding styled *Anthony H.N. Schnelling, as Trustee of the JRCC Unsecured Creditor Liquidating Trust v. Rothschild, Inc.*, adv. pro. no. 305-00409A.

4. Plaintiff shall file his Response to the Motions for Summary Judgment, and his Memorandum of Law, by January 17, 2006.

5. Defendants shall file any Reply to the Plaintiff's Response by January 24, 2006.

6. A hearing on the Motion(s) for Summary Judgment and the Plaintiff's Response is hereby scheduled for February 9, 2006, at 1:30 P.M., Courtroom Three, Customs House, 701 Broadway, Nashville, TN 37203.

7. Discovery shall not commence in the Preference Proceedings until further order of the Court.

8. All other matters and issues, including whether to administratively consolidate the Preference Proceedings, are hereby reserved for future determination.

272621 3/2005398

3

9.    This Order shall be entered in this Chapter 11 case but not in the individual

Preference Proceedings. However, this Order shall be applicable in all of the Preference

Proceedings.

**/s/Marian F. Harrison**    DEC 1 3 2005

HONORABLE MARIAN F. HARRISON
UNITED STATES BANKRUPTCY JUDGE

APPROVED FOR ENTRY:

/s/Thomas H. Forrester
Thomas H. Forrester/Linda W. Knight
Gullett, Sanford, Robinson & Martin, PLLC
Suite 1100
315 Deaderick Street
P. O. Box 198888
Nashville, TN 37219-8888
615-244-4994
Fax 615-256-6339
tforrester@gsrm.com; lknight@gsrm.com;
bke@gsrm.com

332021.3/2805508

4    .